IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

EIRIK TILLMAN,

                        Plaintiff,                Case No. 3:09 CV 2351

       -vs-

                                             <u>MEMORANDUM OPINION</u>

OHIO BELL TELEPHONE CO.

                        Defendant.

KATZ, J.

This matter is before the Court on the motion of Defendant, Ohio Bell Telephone Company, for summary judgment (Doc. 32).  Plaintiff, Eirik Tillman, has filed a memorandum in opposition (Doc. 37), to which Defendant has filed a reply (Doc. 40).  The motion will be granted.

**I. Background**

Plaintiff began working for Defendant as a Communications Technician in November 2000.  He was promoted to the position of Telecommunications Specialist (TCS) in 2004.  This position was subject to the terms of a Collective Bargaining Agreement (CBA).  At this post, Plaintiff was frequently required to work nights and weekends due to his low seniority.

The TCS position involved both provisioning work (filling customer orders for phone and internet services) and maintenance work (investigating reports of customer problems to determine whether the source was Defendant's internal systems or external equipment or connections at the customer's site).  The job description for the position lists lifting up to 100 pounds as a physical requirement, as well as the ability to climb ladders.

Plaintiff suffers from lumbar degenerative disk disease, a chronic back condition.  In connection with this condition, Plaintiff suffers from exacerbated pain two to three days a month.  According to his treating physician, Dr. Elizabeth Hoffman, he would not be able to predict in

advance when he would have one of these periods of more severe pain. (Doc. 51 ["Hoffman Depo."] at 78). This intense pain impairs Plaintiff's ability to lift, to carry heavy objects, to bend repeatedly, to bend at the waist, or to walk for more than five to ten minutes at a time. He also would not be able to drive for over an hour, though he could drive short distances. The medications that his treating physician prescribed for his back condition did not impair his ability to drive or work, or cause him other adverse side effects. Hoffman referred him to Total Rehab of Bedford to take part in physical therapy, but Plaintiff was discharged by Total Rehab in June 2008 after attending only two sessions there. Plaintiff was subsequently placed on a home program that did not require him to take time off of work to complete. (Hoffman Depo. at 73).

In July 2006, Defendant gave Plaintiff paid leave under the Family and Medical Leave Act (FMLA) for his own serious health condition of depression. Defendant also provided Plaintiff with FMLA leave time in October 2006 to care for an ill family member. In December 2006, Plaintiff began requesting and receiving paid intermittent FMLA leave for his back condition. He was granted such FMLA leave for two to six days per month in January, February, March, April, October, November, and December 2007. During October, November, and December 2007, Plaintiff's FMLA leaves routinely fell on Fridays and weekdays, providing him with three- or four-day weekends for at least one weekend in October, three in November, and another three in December, including the weekend preceding the New Year's holiday.

In 2008, Plaintiff was placed on short-term disability leave for approximately two and a half weeks for nasal adhesions, which counted as FMLA leave time. Beginning in May 2008, Plaintiff again sought paid intermittent paid FMLA leave for his back condition. He requested three days of paid FMLA leave every month from May 2008 to April 2009, except for August and

2

September 2008 (he requested only two days of FMLA leave in August).  The requested leave typically fell on Fridays and weekends, and were frequently adjacent to scheduled days off or holidays, providing Plaintiff with three- and four-day weekends.

Additionally, Plaintiff often notified his supervisor in advance when he intended to use FMLA leave.  For example, on December 12, 2007, Plaintiff emailed his supervisor, Antone Boyer, to inform him that he would be on FMLA leave from December 14 through December 16 of 2007.  The next day, Plaintiff emailed Boyer to notify him that he would be taking FMLA leaves from December 21 through December 23, 2007, and on December 29, 2007.  Similarly, he informed Boyer on June 27, 2008 that he would be taking FMLA leave on July 12, 19, and 26, three of the four Saturdays of that month.  On December 1, 2008, Plaintiff sent an email to his supervisor, Tony Fuentes, explaining that, "If I end up on evenings due to seniority, I'm letting let [sic] you knowing [sic] advance I will be using a FMLA day on Dec 13th. I'm not sure how all this is going to work out.  Am I considered low man on a borrowed basis?" (Doc. 50 ["Tillman Depo."], Exh. AA).  He sent another email to Boyer the next day, December 17, 2008, advising him that he was taking December 31, January 2, and January 3 off as FMLA time.  (Doc. 50, Exh. BB).

Beginning in 2006, Plaintiff's supervisors and co-workers, including Boyer and Fuentes, began noticing these patterns in his FMLA leave and approached Defendant's Area Manager, Ann Taylor, with their concerns.  For a long period of time, Taylor brushed aside their concerns, saying that Plaintiff had been approved for intermittent FMLA leave by Human Resources.  After persistent complaints, however, Taylor began asking the complaining employees to substantiate their allegations of FMLA misuse.  Based on the documentation of Plaintiff's leave, however,

Taylor noticed the pattern of Plaintiff taking Fridays, Saturdays, and days adjacent to holidays off, as well as Plaintiff informing his supervisors of the dates weeks in advance.

Taylor sent an email to Human Resources relaying these findings on November 5, 2008. (Doc. 52, Exh. 43).  Her Human Resources representative, Wendy McComb, recommended submitting a Request for Investigation (RFI) to the FMLA Department.  The RFI was submitted to Mary Glass, FMLA Manager-Asset Protection Liason.  Glass found Plaintiff's FMLA use suspicious due to his practice of requesting leave in advance and adding FMLA to his days off to extend his time out of the office.  But Glass initially denied the RFI, concluding that because Plaintiff worked night shifts, it would be difficult to investigate his activities during hours when, in all likelihood,  "he would just be sleeping." (Doc. 53 ["Glass Depo."] at 47).  But she advised that the RFI could be brought back to her if Plaintiff's work tour changed.

On December 23, 2008, Glass approved the RFI, based upon Plaintiff's request for FMLA leave during the four days adjacent to the New Year's holiday, as well as changes in his work tours.  After she approved the RFI, Glass turned the matter over to the company's Asset Protection Department to conduct the investigation.  The case was assigned to Investigator Patrick McCreary.

McCreary obtained the dates for which Plaintiff had requested FMLA leave in advance, and hired a private investigation company to conduct surveillance of Plaintiff during his FMLA leaves.  On March 15, 2009, Plaintiff was observed working in his yard and in his garage for approximately two hours.  On March 28, 2009, Plaintiff was observed driving his family around and running several personal errands, such as visiting a sporting goods store, a department store, and a coffee shop, for about two hours.  Plaintiff was also observed working in his garage,

4

bending down and lifting pieces of wood trim and then transporting them from the garage to the house several times.  These activities were all captured on video.

At Glass's direction, McCreary gave the video and accompanying surveillance report to Dr. Shirley Conibear, an outside medical consultant, for review.  Conibear reviewed the video and written surveillance report, along with two recent FMLA certification forms signed by Dr. Hoffman and the TCS job description.  She issued a report of her findings on April 10, 2009, in which she concluded that, in her professional opinion, Plaintiff's activities on his days off were inconsistent with the "physical behaviors typical of someone with incapacitating back pain," and that he was not incapacitated from performing his work duties on March 15 and 28, 2009.  She cited the video evidence showing Plaintiff bending at the waist and standing again frequently without any sign of stiffness, pain, or weakness, walking briskly, entering and exiting his car fluidly, and generally engaging in physical activities with vigor and stamina and without any indication of pain or limitation.

On April 16, 2009, McCreary met with Plaintiff and interviewed him regarding his FMLA usage and activities on March 15 and 28.  During the interview, Plaintiff indicated that he usually used his FMLA time on the weekends in order to do his exercises, because he's too busy to do them during the week. He said that he did not recall his activities on March 15 but suggested that his doctor may have given him a cortisone shot.  He also did not recall his activities on March 28, but speculated that he may have been under the influence of Oxycodene or Percocet, which would have prevented him from operating a vehicle or machinery (although he apparently was able to drive his family around on errands).  He acknowledged, however, that he was not incapacitated

every time he took FMLA leave. Following the interview, he was suspended pending further

investigation.

After review of the investigation findings, Taylor decided that Plaintiff's employment

should be terminated. Dismissal Review Board proceedings, required by the CBA, were

conducted on May 11, 2009. Plaintiff was terminated pursuant to the provision of the AT&T

Code of Business Conduct (to which Defendant is subject) stating:

> Fraudulent or illegal conduct committed on or off the job may be grounds for
> disciplinary action, up to and including dismissal.
> Fraudulent or illegal conduct includes, but is not limited to, any oral or written
> misrepresentation of facts, misappropriation of funds, theft, improper reporting of
> time or expenses, wrongfully claiming employee or dependent benefits, or any
> other dishonest acts, done on or off the job, and whether done while working for an
> SBC company or elsewhere, or prior to employment with SBC.

Plaintiff has admitted his familiarity with that provision of the Code of Business Conduct. He was

terminated effective May 15, 2009. His union declined to contest his case through the arbitration

process. He filed this lawsuit on October 12, 2009, claiming that Defendant violated the FMLA

by interfering with his exercise of rights thereunder, and/or retaliating against him.

## II. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of "informing the

district court of the basis for its motion, and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

6

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim.  *Id*. at 323-25.  Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position.  *Celotex*, 477 U.S. at 324; see also *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party."  *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).  However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact."

*Williams*, 154 F. Supp. 2d at 1071.  The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried."  *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999).  Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; see also *Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## III. Discussion

In this suit, Plaintiff asserts claims for both FMLA interference and FMLA retaliation.

To establish an FMLA interference claim, Plaintiff must demonstrate: (1) he is an eligible employee; (2) Defendant is a covered employer; (3) Plaintiff was entitled to leave under the FMLA because of a serious health condition; (4) he gave Defendant notice of his intention to take leave; and (5) Defendant denied Plaintiff FMLA benefits to which he was entitled.  *Thom v. American Standard, Inc.*, 562 F.Supp.2d 949, 951-952 (N.D. Ohio 2008).  Plaintiff must also show "prejudice," that is, that the FMLA violation was the cause of his alleged injury.

To make out a prima facie case of FMLA retaliation, Plaintiff must show: (1) he was engaged in FMLA-protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the exercise of his rights under the FMLA and the adverse employment action.  *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

Both FMLA interference and FMLA retaliation claims are subject to the "honest belief" rule.  *Reinwald v. The Huntington Nat'l Bank*, 684 F.Supp.2d 975, 984-985 (S.D. Ohio 2010). Under that rule, to survive summary judgment, Plaintiff "must allege more than a dispute over the facts upon which his discharge was based."  *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th

8

Cir.2001).  He must "put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Id.*  "In order to determine whether the defendant had an 'honest belief' in the proffered basis for the adverse employment action, this Court looks to whether the employer can establish its 'reasonable reliance' on the particularized facts that were before it at the time the decision was made." *Id.*

In determining whether an employer reasonably relied on the particularized facts before it, the Court "do[es] not require that the decisional process used by the employer be optimal or that it left no stone unturned.  Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action."  *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).  Therefore, "[a]n employer does not violate the FMLA by terminating an employee if the employer held an honest belief based on particularized facts that the employee abused that leave."  *Reinwald*, 684 F.Supp. 2d at 984 (internal quotation marks omitted).

In this case, the Court finds that Dr. Conibear's expert report, and the underlying surveillance footage and medical documentation upon which it was based, provided sufficient "particularized facts" to support terminating Plaintiff for abusing FMLA leave.  Dr. Conibear's findings, that Plaintiff's fluid movements and vigorous activities belied his assertion that he required FMLA leave due to incapacitating back pain, were based on specific evidence and set forth a reasonable medical interpretation of that evidence.  Moreover, the Court finds that Plaintiff has not produced evidence to raise a genuine issue of material fact as to the reasonableness of Defendant's reliance on those particularized facts, or the genuineness of Defendant's proffered basis for Plaintiff's termination.

The Court finds that the alleged deficiencies in Dr. Conibear's report pointed to by Plaintiff do not come close to meeting its burden of showing a genuine issue of fact relating to the genuineness of Defendant's belief in its stated reason for terminating Plaintiff.  See *Stonum v. US Airways*, 83 F.Supp.2d 894, 903 (S.D. Ohio 1999) ("The critical issue, however, is not whether the investigator's report was accurate, or whether [the plaintiff] actually abused her FMLA leave" but instead "whether the [d]efendant terminated [the plaintiff] based upon a good faith, reasonable belief that she had abused that leave.").  Nor does the Court find relevant that the surveillance video arguably does not provide "smoking gun" evidence of FMLA abuse or show that Plaintiff was "caught red handed" on the days in question, or that Plaintiff arguably did not lie about his activities on those days during his subsequent interview with McCreary.  Defendant was entitled to disbelieve Plaintiff's assertion that he was under the influence of Oxycodene or Pecocet because he did not disclose any indication of incapacitating side effects resulting from medication, or that he had been prescribed such medication, on his FMLA certification forms.  Indeed, Plaintiff's treating physician testified that she had not prescribed such medication to him.  See Hoffman Depo. at 82.

The unreported case of *Weimer v. Honda of America Mfg., Inc.*, 2008 WL 2421648 (S.D. Ohio Jun. 12, 2008) is distinguishable.  In that case, the employee was on continuous FMLA leave, and believed that he was unable to return to work without a medical clearance from his doctor, regardless of his physical ability or condition.  *Id*. at *4-*5.  Thus, there was a genuine issue as to whether the plaintiff in that case actually misrepresented the factor that motivated his FMLA leave.  In this case, by contrast, there is no question that, based on Dr. Conibear's report,

10

Plaintiff's activities on March 15 and 28 were inconsistent with his stated reasons for requiring FMLA leave.

**IV. Conclusion**

  For the foregoing reasons, Defendant's motion for summary judgment (Doc. 32) is granted.  Case closed.

  IT IS SO ORDERED.

         s/ *David A. Katz*
        DAVID A. KATZ
        U. S. DISTRICT JUDGE